# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

SHEILA A. GONZALEZ,

      Plaintiff,

      v.                             CAUSE NO.: 2:24-CV-426-TLS

FRANK BISIGNANO, Commissioner of the
Social Security Administration,

      Defendant.

## OPINION AND ORDER

The Plaintiff Sheila A. Gonzalez seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. The Plaintiff argues that the Administrative Law Judge (ALJ) erred (1) in assessing the RFC by failing to explain how the evidence led to her conclusions and by failing to consider the Plaintiff's obesity and (2) in considering the Plaintiff's subjective symptoms by failing to evaluate the relevant regulatory factors. For the reasons set forth below, the Court finds that the ALJ's decision is supported by substantial evidence such that remand is not warranted.

## PROCEDURAL BACKGROUND

On September 6, 2022, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on November 3, 2020, which she later amended to April 23, 2022. AR 17, ECF No. 5. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on February 23, 2024. *Id.* On April 29, 2024, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 17–27. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–6. Thus, the ALJ's decision is the final decision of the

Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On December 4, 2024, the Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief, and the Commissioner filed a response, and the Plaintiff filed a reply. ECF Nos. 10, 20, 23.

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since April 23, 2022, the amended alleged onset date. AR 19.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of lumbar spondylosis, rheumatoid arthritis, and obesity. AR 20.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.15 and 14.09. AR 20–21.

When a claimant's impairments do not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps, stairs, stoop, kneel crouch, and crawl, and frequently balance. The claimant can frequently reach, handle, finger and feel with the bilateral upper extremities. The claimant can have no exposure to hazards such as high exposed places and moving mechanical parts. She must avoid concentrated exposure to extreme heat, cold, and humidity.

AR 21.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work under 20 C.F.R. § 404.1565. AR 25.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's

age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of cashier, assembler, and general office helper. AR 26. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v.*

4

*Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

On this appeal, the Plaintiff seeks reversal and remand, arguing that the ALJ failed to properly consider her obesity and other impairments in formulating the RFC and failed to properly consider her subjective symptoms. The Defendant responds that the ALJ sufficiently considered the record and articulated her decision and that the decision is supported by substantial evidence. The Court considers each of the Plaintiff's arguments in turn.

### A.    RFC—Obesity and Combination of Impairments

The RFC is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes the claimant's medical history; medical signs and laboratory findings; the

effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). The ALJ must provide a narrative discussion of the record evidence and an explanation as to how the evidence supports the ALJ's RFC findings. SSR 96-8p, 1996 WL 374184, at *7.

At step two of the sequential analysis, the ALJ found that the Plaintiff has the severe impairments of lumbar spondylosis, rheumatoid arthritis, and obesity. AR 20. After the step-three finding that the impairments do not meet or equal a listing, the ALJ found that the Plaintiff has the RFC to perform light work except she can never climb ladders, ropes, or scaffolds; can occasionally climb ramps, stairs, stoop, kneel, crouch, and crawl; can frequently balance; can frequently reach, handle, finger, and feel with the bilateral upper extremities; but can have no exposure to hazards and must avoid concentrated exposure to extreme heat, cold, and humidity. AR 21.

The Plaintiff argues that the ALJ failed to comply with the requirements of 20 C.F.R. § 404.1545 and SSR 96-8p by failing to consider the impact of the Plaintiff's obesity on her other impairments and by failing to explain how the evidence led to her conclusions. The Court considers each argument in turn.

*1.    Obesity*

Social Security Ruling 19-2p ("Evaluating Cases Involving Obesity") acknowledges that a claimant's obesity, in combination with other impairments, may increase the severity or

6

functional limitations of other impairments. SSR 19-2p, 2019 WL 2374244, *2 (May 20, 2019).

The Ruling provides that, at step two of the sequential analysis, the ALJ must consider the

severity of the claimant's obesity, and, at step three, the ALJ must evaluate obesity under the

listings. *Id.* at *3–4. The Ruling also places an affirmative duty on the ALJ to consider the

limiting effects of obesity in combination with a claimant's other impairments in assessing the

claimant's RFC. *Id.* at *4.

   The Plaintiff contends that, although the ALJ found the Plaintiff's obesity to be severe at

step two, the ALJ failed to indicate what effects obesity had on the Plaintiff's ability to perform

work activities when formulating the RFC. The Plaintiff also criticizes the ALJ for relying on

and adopting the medical consultants' opinions without further limitation due to her obesity.

    As argued by the Defendant, the ALJ properly considered the Plaintiff's obesity in

formulating the RFC. At step three, the ALJ noted that, pursuant to SSR 19-2p, obesity is no

longer a listings impairment but that the Plaintiff's obesity was considered in relation to all her

impairments. AR 21. The ALJ noted that, as of October 2023, the Plaintiff's height was recorded

as 5'6" and her weight was 220 pounds. *Id.* The Plaintiff ignores that, in the RFC analysis of the

medical evidence, the ALJ also specifically included the Plaintiff's height of 5'6" and weight of

200 pounds at the consultative examination. AR 22. These references are sufficient to show the

ALJ considered the impact of the Plaintiff's obesity in combination with her other impairments.

*See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have

emphasized that social-security adjudicators are subject to only the most minimal of articulation

requirements. The ALJ need not address every piece or category of evidence identified by a

claimant, fully summarize the record, or cite support for every proposition or chain of

reasoning.").

While the ALJ did not further discuss the Plaintiff's obesity in the RFC narrative, any error was harmless because the ALJ relied on the opinions of the state agency medical consultants who also considered the Plaintiff's obesity. *See* AR 24–25 (citing Exs. C2A, C4A). Drs. Corcoran and Hasanadka specifically noted the Plaintiff's height and weight in their January and August 2023 opinions, respectively. AR 64–65 (Ex. C2A), 72–73 (Ex. C4A). Both medical consultants made this notation under the heading "RFC Additional Explanation," indicating that the Plaintiff's height and weight were factored into their RFC opinions. *Id.* As a result, the ALJ factored the Plaintiff's obesity into the RFC determination. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("[T]he ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision a part of the doctors' opinions."); *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013) ("We agree with Pepper that the ALJ did not specifically undertake such an analysis. We have held, however, that this type of error may be harmless when the RFC is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments."); *Hoyt v. Colvin*, 553 F. App'x 625, 628 (7th Cir. 2014) ("[T]he ALJ indirectly accounted for Hoyt's obesity by relying on the medical opinions of state-agency physicians who evaluated his height and weight." (citation omitted)).

The inclusion of the Plaintiff's height and weight in the "RFC Additional Explanation" belies the Plaintiff's assertion that the state agency medical consultants did not indicate if they considered her obesity. *See* Pl. Br. 10–11, ECF No. 10. And the Plaintiff cites no authority for her suggestion that the state agency medical consultants are required to provide a detailed analysis of how her obesity was factored into the opinions. Courts in the Seventh Circuit have

found it sufficient that the medical consultant was aware of the claimant's obesity. *See Pena v. O'Malley*, No. 1:23-CV-418, 2024 WL 2933116, at *4–5 (N.D. Ind. June 10, 2024); *William S. v. O'Malley*, No. 3:23-CV-23, 2024 WL 3439604, at *4–5 (S.D. Ind. Mar. 21, 2024) (finding that merely because the reviewing medical consultants did not expressly reference certain abnormal evidence does not mean they did not consider it).

The Plaintiff cites *Arnett v. Astrue*, 676 F.3d 586 (7th Cir. 2012), to argue that remand is required because the ALJ did not meet the minimal articulation requirement regarding her obesity. However, *Arnett* is distinguishable because the ALJ did not discuss at all the plaintiff's lumbosacral neuritis, degenerative disc disease, osteoarthritis, or degenerative changes in her sacroiliac joints and it was not clear whether the medical opinions relied on by ALJ considered those physical impairments. *Id.* at 592–93. Here, it is undisputed that the medical opinions relied on by the ALJ considered the Plaintiff's obesity.

The Plaintiff also argues that the ALJ's failure to provide a more detailed analysis is not harmless because she "suffered multiple conditions which *could have been* exacerbated by obesity," citing records regarding her lower back pain that radiates into her legs and lumbar spondylosis. Pl. Br. 12 (emphasis added). However, the Plaintiff cites no evidence to show that greater RFC limitations than those imposed by the state agency physicians and adopted by the ALJ were warranted because of her obesity. *See Claar v. Dudek*, 1:24-CV-361, 2025 WL 2371062, at *3 (N.D. Ind. Aug. 14, 2025) ("Without any evidence to support the claim that her obesity limited her ability to work, Claar's bald claim that the ALJ did not sufficiently analyze her weight goes nowhere.").

The Plaintiff next erroneously accuses the ALJ of ignoring the Plaintiff's diagnosis of lumbar radiculopathy. Pl. Br. 12–13. This argument is not well taken as the ALJ repeatedly

acknowledged the Plaintiff's back pain that radiated down her leg. *See* AR 21 ("She has low back pain into her legs."); AR 22 (noting that, at the December 2022 consultative examination, she reported that, "[d]espite having back surgery, she continues to have lower back pain intermittently, which sometimes radiates to the legs"); AR 23 (noting a "follow-up on May 4, 2023, for spondylosis with radiculopathy, lumbar region" and that she reported that she "no longer had any right leg pain"); *id.* ("During an office visit on December 14, 2023, the claimant reported left hip and back pain in the lumbar spine that did not radiate."); *id.* (noting the Plaintiff's testimony that "[s]he has low back pain into her legs"); AR 24 (noting the May 4, 2023 follow-up for "spondylosis with radiculopathy"); *id.* (noting that in December 2023 the Plaintiff reported "back pain that did not radiate"). The Plaintiff does not acknowledge or distinguish the ALJ's discussion of these records.

The ALJ also noted more than once that, after her second lumbar surgery in January 2023, the Plaintiff reported that she was doing well and no longer had any radiating right leg pain. AR 23–25 (citing AR 1075–76 (Ex. C5F)). The ALJ considered the Plaintiff's complaints of bilateral knee pain, with imaging showing only mild arthritic changes and trace fluid in her right knee and no bony abnormality in her left. AR 25 (citing AR 952–55 (Ex. C3F)). And, the ALJ noted that, following a long car ride, the Plaintiff had complaints of non-radiating back and hip pain, for which she received a Tramadol injection in December 2023 with no additional medical evidence regarding the injection. AR 25 (citing AR 3141–44 (Ex. C13F)).

The Plaintiff also contends that the ALJ failed to consider her obesity in combination with her rheumatoid arthritis, noting that the Plaintiff's rheumatoid arthritis affected her ankles and feet. But the Plaintiff offers no evidence that her obesity exacerbated her rheumatoid arthritis. And the ALJ considered the records regarding the rheumatoid arthritis in the Plaintiff's

ankles and feet as well as her ability to walk unassisted. *See* AR 22 ("She does not use an assistive device for walking."); *id.* (noting that in April 2023, the Plaintiff mentioned her ankles had been hurting, denied any current swelling, but claimed some intermittent swelling and that examination showed no swelling of the ankle (citing AR 997, 1003 (Ex. C4F/42, 48))); AR 23 (noting that the examination in May 2023 revealed some swelling to the ankles but no pitting edema, motor was 5/5 to the bilateral lower extremities, sensation was intact, and she ambulated without an assistive device (citing AR 1079 (Ex. C5F/19))); *id.* (rheumatoid follow up in October 2023 showed no feet swelling but MTP tenderness and no ankle swelling but right PTT tenderness (citing AR 2849 (Ex. C10F/53))); AR 24 (summarizing history of rheumatoid arthritis and treatment (citing AR 2845, 2849, 2886 (Exs. C10F/49, 53, 90))). In formulating the RFC, the ALJ noted these findings but found that greater limitation was not warranted because the Plaintiff "had a mildly limping gait but ambulated without an assistive device, had normal motor strength, and normal sensation." AR 25.

Similarly, the Plaintiff notes records that she had pain in her hips and knees and argues the ALJ did not discuss whether her hip or knee impairments were medically determinable impairments, impermissibly ignoring a line of evidence. However, the ALJ specifically discussed the most recent record cited by the Plaintiff from the December 14, 2023 office visit, noting that the Plaintiff reported left hip pain and back pain in the lumbar spine that did not radiate, that the pain was 5 on a scale of 1–10, and that she was given a Toradol injection for the pain. *See* Pl. Br. 14; AR 24 (citing AR 3141 (C13F/5). Again, the Plaintiff has not cited records to support greater limitations.

The Plaintiff has not shown reversible error as to the ALJ's consideration of her obesity in formulating the RFC.

2.    *Hand Limitations Due to Swelling*

The Plaintiff next criticizes the ALJ for assessing the additional limitation that the Plaintiff can only frequently reach, handle, finger, and feel with both upper extremities, which is a greater limitation than opined by the state agency consultants. The Plaintiff argues that the ALJ offered no explanation for why she found the Plaintiff can manage those activities frequently as opposed to only occasionally, or less.

First, the Seventh Circuit has stated that when no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error. *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (finding that "a fundamental problem is that [the claimant] offered no opinion from any doctor to set . . . any other limits, greater than those the ALJ set"); *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004))). The Plaintiff has not identified any such medical opinion.

Next, the ALJ in fact explained why she added the greater limitation of only frequent handling, fingering, and feeling. AR 24–25. Although she found the state agency medical consultants persuasive, the ALJ found that the records of the Plaintiff's mild hand swelling but normal grip strength and normal fine finger manipulation warranted the greater limitation. AR 25 (citing AR 946, 2924, 2951 (Exs. C3F/4, C10F/128, C10F/155)). The ALJ commented that she included the limitation even though the Plaintiff displayed no swelling in her hands or other joints after being on Actemra injections for months. *Id.* (citing AR 2849 (Ex. C10F/53)). In other words, the ALJ did not simply summarize the evidence; she explained her reasoning. *Cf. Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (finding that the ALJ failed to build a logical bridge

between the evidence and her conclusion when she did not explain how she reached her conclusions).

Implying that even more restrictions were warranted, the Plaintiff lists medical records of her history of cervical disc fusion, neck pain that radiated into her arms, weak left arm, neck movement aggravating her pain, decreased strength in both her left triceps and grips, MRIs, pain in hands due to rheumatoid arthritis, tenderness in PIP and MCP joins on examination, doctors observing swelling in both hands, and arthritic changes in hands. Pl. Br. 16. However, as noted by the Defendant, much of the cited evidence predates the Plaintiff's alleged disability onset date of April 23, 2022, and most of the evidence is discussed by the ALJ in her RFC analysis. AR 22. Again, the Plaintiff has not identified any specific record to show greater limitations in light of the ALJ's reliance on the evidence that the Plaintiff's fingers were only mildly swollen, she had normal grip strength, and she had normal fine finger manipulation during examinations. *Id.* The ALJ supported the hand limitations in the RFC with substantial evidence.

3.    *Rheumatoid Arthritis Flares*

Last, the Plaintiff notes her hearing testimony that every other week she had flares of rheumatoid arthritis swelling in her swollen hands, feet, or ankles and that her most recent flare lasted two weeks. AR 44–45. In her decision, the ALJ indicated that the records of the Plaintiff's rheumatologist, T. Kudaimi, M.D., did not support flares every two weeks or the Plaintiff's report that the injections were not preventing flares. AR 24. The ALJ also relied on treatment notes showing the Plaintiff had no tenderness or swelling in any joint after being on a course of Actemra injections for her rheumatoid arthritis. *Id.*

The Plaintiff contends that the ALJ's reasoning is in error because the Plaintiff did not see her rheumatologist every two weeks; thus, treatment records would not document flares that

often. This reasoning is illogical. If the Plaintiff were having flares, she would have reported them to her rheumatologist, even if she did not see her rheumatologist every time she had a flare. The ALJ was not stating that the Plaintiff did not see the rheumatologist often enough—just that the records did not support the Plaintiff's testimony that she had flares that often. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803–04 (7th Cir. 2005) (finding that the ALJ properly considered inconsistencies between the severity of symptoms reported by the Plaintiff at the hearing and those reported while seeking treatment). As noted by the Defendant, the October 2023 treatment notes cited by the ALJ were among the most recent prior to the February 2024 hearing. *See* AR 23–25.

Contending that the "[a]bsence of information does not undermine Plaintiff's reports," Pl. Br. 18, the Plaintiff cites *Israel v. Colvin*, 840 F.3d 432, 438–39 (7th Cir. 2016). However, the court in *Israel* was concerned with the contents of a consulting physician's report and the fact that "the regulations do not require that a consulting physician report all limitations to the ALJ." *Id.* at 439. That is a separate issue from an ALJ's consideration of the content of treatment records in contrast with a claimant's testimony.

The Plaintiff contends that the evidence documented flares and that the ALJ "should have addressed the occurrence of flares, determined how frequently flares might happen and the impact of the frequency of flares." Pl. Br. 18. However, this requires a level of speculation by the ALJ not supported by the regulations. The Plaintiff's citation of *Moon v. Colvin*, 763 F.3d 718, 723 (7th Cir. 2014), in support is not persuasive. In *Moon*, the ALJ did not provide an assessment of the plaintiff's testimony regarding the effect of her migraines. *Id.* at 722–23. In contrast, the ALJ in this case discussed the Plaintiff's testimony regarding flares and explained

why she found the evidence did not support the testimony. The ALJ's consideration of the

Plaintiff's flares is sufficiently articulated and supported by substantial evidence.

**B.    Subjective Symptoms**

SSR 16-3p requires the ALJ to "consider all of the individual's symptoms, including

pain, and the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304,

at *2 (Oct. 25, 2017). The "decision must contain specific reasons for the weight given to the

individual's symptoms, be consistent with and supported by the evidence, and be clearly

articulated so the individual and any subsequent reviewer can assess how the adjudicator

evaluated the individual's symptoms." *Id.* at *10.

"In evaluating the intensity and persistence of [the claimant's] symptoms, including pain,

[the ALJ] will consider all of the available evidence, including [the claimant's] medical history,

the medical signs and laboratory findings, and statements about how [the claimant's] symptoms

affect [her]." 20 C.F.R. § 404.1529(a). The ALJ must consider all the available evidence from

medical sources, nonmedical sources, and medical opinions. *Id.* § 404.1529(c)(1). However, the

Agency "will not evaluate an individual's symptoms based solely on objective medical evidence

unless the objective medical evidence supports a finding that the individual is disabled." SSR 16-

3p, 2017 WL 5180304, at *5; *see* 20 C.F.R. § 404.1529(c)(2).

"Objective medical evidence is evidence obtained from the application of medically

acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint

motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2). This

type of evidence "is a useful indicator to assist . . . in making reasonable conclusions about the

intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as

15

pain, may have on [the claimant's] ability to work." 20 C.F.R. § 404.1529(c)(2); *see* SSR 16-3p,

2017 WL 5180304, at *5. The ALJ must also consider "other evidence" the claimant submits

about her symptoms. 20 C.F.R. § 404.1529(c)(3). This other evidence includes "any symptom-

related functional limitations and restrictions" reported by medical or nonmedical sources that

can reasonably be accepted as consistent with the objective and other medical evidence. *Id.* The

ALJ must "consider all the evidence presented, including information about [the claimant's]

prior work record, [the claimant's] statements about [her] symptoms, evidence submitted by

[her] medical sources, and observations by [SSA] employees and [others]." *Id.* The regulations

provide the following factors to be considered relevant to a claimant's symptoms:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.* An ALJ's subjective symptom assessment is entitled to great deference, and it should be

upheld unless patently wrong. *See Summers*, 864 F.3d at 528; *Schmidt*, 496 F.3d at 843.

In this case, the ALJ found the Plaintiff's statements about the intensity, persistence, and

limiting effects of her symptoms not fully consist with the record. AR 23. The ALJ noted the

Plaintiff's allegations of an inability to work due to pain from rheumatoid arthritis and

exhaustion, pain throughout her body, and swelling in her hands and feet. *Id.* As discussed

above, the ALJ noted the Plaintiff's testimony that she has a rheumatoid arthritis flare about

every two weeks and that the shots do not prevent the flares. *Id.* The ALJ noted the Plaintiff's

testimony that she had no improvement from either of her back surgeries in 2020 and 2023, she

has low back pain into her legs, and she had no improvement from physical therapy or injections.

*Id.* The ALJ noted that the Plaintiff reported problems with writing and that she drops things and

that it is difficult to lift a gallon of milk. AR 23–24. Finally, the ALJ noted her testimony that she

does not use an assistive device for walking and that she has neck pain that goes down into the

right arm intermittently. AR 24.

The ALJ then spent several paragraphs explaining why she did not find the Plaintiff's

statements to be supported by the evidence of record. Contrary to the Plaintiff's assertion that the

ALJ merely summarized the evidence, the ALJ noted aspects of each record that did not support

the Plaintiff's testimony. AR 24–25. The ALJ considered the objective medical evidence related

to the Plaintiff's impairments, including both positive and largely negative, trace, or mild exam

results, and imaging with some moderate findings. AR 22–25 (citing AR 946–47, 951–55, 2845–

50, 2886, 3135–36 (Exs. C3F/4–5, 9–13, C10F/49–54, 90, C11F, C12F)). The ALJ also

considered the Plaintiff's treatment history. AR 22–25. This included the unknown efficacy of a

recent Tramadol injection for her complaint of tailbone and hip pain, the records of the positive

efficacy of surgery that alleviated her lumbar spondylosis with radiculopathy, and the Actemra

injections that relieved pain and swelling in her joints from arthritis. *Id.* (citing AR 1085, 2845,

2886, 3141–44 (Exs. C5F/19, C10F/49, 90, C13F)). Next, the ALJ considered the record medical

opinions, none of which assessed any greater functional limitations that those found by the ALJ.

AR 24–25 (citing AR 64–65 (Ex. C2A), 72–73 (Ex. C4A)).

Thus, contrary to the Plaintiff's assertion, the ALJ did not rely solely on the positive

October 2023 treatment notes regarding her rheumatoid arthritis in evaluating the Plaintiff's

subjective symptoms nor did the ALJ make a "snap-shot" evaluation. Rather, the ALJ considered the entire course of the Plaintiff's treatment for rheumatoid arthritis during the relevant time period and reasonably found that the Plaintiff displayed no swelling or tenderness after receiving Actemra for several months. AR 25.

The Plaintiff next contends the ALJ only relied on findings related to her rheumatoid arthritis and ignored other conditions such as her lumbar radiculopathy. Again, this assertion is belied by the ALJ's written decision, which shows that the ALJ considered the Plaintiff's prior surgery and that she was "doing very well and no longer had any right leg pain." AR 24 (citing AR 1075 (Ex. C5F/15)). The ALJ also considered the evidence related to her hands as well as her hip and leg. *Id.* As for her testimony that she has difficulty lifting a gallon of milk, the ALJ noted the record documents that the Plaintiff had normal motor strength with normal grip strength. *Id.* (citing AR 946 (Ex. C3F/4)).

Contrary to the cases cited by the Plaintiff, the ALJ did not selectively consider only the objective evidence or the only the evidence that supported her conclusion. *See Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (finding the ALJ's "apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal"); *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (finding the ALJ's decision "further compromised by a mischaracterization of the medical evidence"); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (explaining that the ALJ must consider the effect of obesity on an obese claimants "narrative of her ability to stand, sit, etc.").

The Plaintiff also reasons that, even if her condition improved with treatment, the improvement did not mean that her symptoms did not continue to be significant and limiting. However, as discussed above, the ALJ carefully considered the record and supported her analysis

with citations to the record; addressed each of the Plaintiff's subjective symptoms and the portions of the record that did not support the extent of the asserted limitations; and credited some of her testimony, finding that she was limited to a range of light work, as opined by the state agency medical consultants. The ALJ did not simply find that she had "improved" generally but that the medical records showed specific improvements related to her alleged limiting impairments. *Cf. Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."); *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) ("But there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." (citing *Scott*, 647 F.3d at 739–40)).

Nor did the ALJ place undue significance on the objective evidence. *See Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." (citations omitted)); *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of the pain experience by a given individual can be 'read off' from a medical report."); 20 C.F.R. § 404.1529 ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms."); *see also* SSR 16-3p, 2017 WL 5180304, at *4 ("[W]e recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence."). Here, the objective evidence was only one of several relevant factors the ALJ considered.

The Plaintiff correctly notes that the ALJ did not discuss side effects of medications but any error was harmless. The only record of a medication side effect cited by the Plaintiff is her November 3, 2022 adult function report where she reported that two of her injections made her sleepy. AR 231. There are no further reports of medication side effects, nor does she cite records that she continued to receive those same injections. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." (citation omitted)).

The ALJ considered most of the relevant factors under SSR 16-3p and articulated why she found the Plaintiff limited but not disabled. The ALJ more than satisfied the minimal articulation standards set forth by the Seventh Circuit. *See Warnell*, 97 F.4th at 1052–53; *Grotts*, 27 F.4th at 1279 ("As long as the ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong."). Although the ALJ did not discuss all the Plaintiff's testimony regarding activities of daily living, the ALJ cited sufficient evidence of record regarding the Plaintiff's grip strength, ability to walk without an assistive device, normal motor strength, normal sensation, and the positive response to Actemra injections for the prior ten months to create a logical bridge between the evidence and her analysis of the Plaintiff's subjective symptoms. The Plaintiff has not shown that this evaluation was patently wrong. The ALJ's "conclusion reflects a reasonable assessment of the medical evidence, treatment history, and [the Plaintiff's] daily activities, consistent with agency regulations," and "[b]ecause [the court] may not reweigh the evidence or second-guess the ALJ's well-supported findings," there is no error in the evaluation of the Plaintiff's subjective symptoms. *Padua v. Bisignano*, 145 F.4th 784, 790 (7th Cir. 2025).

## CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief

[ECF No. 10] and AFFIRMS the decision of the Commissioner of the Social Security

Administration. The Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT

stating:

> Final judgment is entered in favor of the Defendant Commissioner of Social
> Security and against the Plaintiff Sheila A. Gonzalez, who takes nothing by her
> Complaint.

SO ORDERED on January 22, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT